All rise and let us have a court-dispositioned non-session of the Justice Virginia Beckett presiding. Everyone can have a seat. Good morning. We only have one case on the call today. Each side has 15 minutes. Both sides should recognize we have read the briefs, but certainly you can emphasize anything that you want. When you step up to the podium, please identify yourself and speak up loudly. This is not an amplifier. It just records what is being said. All right. And the appellant can proceed. Yes, I'm sorry. I haven't seen you in a while. Case number 12-1033, Valentina Mokeyeva v. Gumenyuk. Good morning. I brought this case because I believe the circuit court made a lot of mistakes. Identify yourself for the record. My name is Valentina Mokeyeva. I'm representing myself. I'm a plaintiff appellant on this case. This is the worst case that was brought from circuit court, and this case was tried on March 9, 2012, by Honorable Judge Morgan Hamilton. The case number was 09D0591. I believe that in the judgment, there is a lot of mistakes that have no relation to evidence that was presented at the trial and during the worst proceedings. My husband also stated many false statements, and the judge chose to believe those statements. Well, the issues I want to present for review, whether the trial court ruled correctly on the split of marital finances and property when it failed to determine the correct amount of husband's pension, the amount of wife's mortgage, the amount of equity, whether the wife had pension and savings, and the nature and substance of contested items and issues. Second issue, whether the trial court ruled correctly on denying reserved maintenance for the period of three years to the custodial parent with health issues to children in her care and who is facing layoff in the near future and has outdated IT job skills. The third issue, whether the trial court ruled correctly on allowing immediate unrestricted overnight visitations of the minor child with autism spectrum disorder and limited speech ability with non-custodial parent at the non-custodial parent's girlfriend's rental apartment. Your name is pronounced Mokeyeva? Yes. Were all of these issues which you're going through now raised before the trial court or at trial? Yes. Split of finances was raised and three years of reserved maintenance was raised. Restricted overnight visitations until child is ready was raised at the trial. Everything was before the trial. And also fourth issue, it's that trial court denied custodial parent's request for non-custodial parent to maintain life insurance policy for the benefit of the minor children. And was that raised at trial? Yes, this was raised at trial. Okay, so you're saying that the pension, the maintenance, the visitation, and the insurance issues were all raised at trial? Yes, yes. And also Mary- And the court addressed the maintenance and the visitation issues, but you're saying- Yes. What didn't she address? Well, she allowed visitations with the child even though father doesn't have any place to stay. And he only stated that he lives, and his girlfriend also testified that he lives with her at her apartment. He didn't have any place. But the evidence was that it was a two-bedroom apartment. Is that not correct? Yes, yes. It is a two-bedroom apartment. The girlfriend has her own teenage son. 190 pounds, not- Yes. Yes, and there were issues. The child is not ready. The child is diagnosed with autism spectrum disorder. He is attached to the place. He is not attached to people that much as we understand this. You know, there is no bond between him and the father because father left him when he was barely four years old. And he didn't see him and he didn't take him for overnight visitation since that time until the trial date. So the child is used to his- Which child are you talking about? My child- You have two children. Yes, I have two children. Matthew and Michael, right? Matthew and Michael. Exactly. So when you say the child- I'm talking about Matthew. I'm sorry. You're talking about Matthew. I'm talking about Matthew who is eight years old apparently. Eight years old. I don't feel that he's ready and this was addressed. And I don't mind for the father to take him on visitations, regular visitations, but not overnight because the child is not ready. Okay, but the court heard that issue. Which ones are you saying that the court did not address? Well, court denied- well, court allowed overnight visitations, unrestricted overnight visitations for both of the children. I didn't mind for the older child because he is- well, I think he's old enough and if he wants to stay, he will stay and nobody will force him. I understand that. But with the younger child, he's dependent. He's dependent on someone who knows him well and at the time his speech is improving, but at the time he was barely able to talk and he was unable to communicate and he still is not able to communicate his needs properly. He wants something, but you have to ask him. Did the court address the issue of the college fund? No. Okay. Well, what about the issue with regard to the medical expenses and the insurance? Medical expenses, I stated at the trial that I spent over $4,000 in medical expenses, which included co-pays. It was a lot of money, probably over $1,000, just barely over.  Some of those sessions were not covered because coverage started when Matthew was diagnosed. Before that, the coverage was denied because it was only available for repair of speech, but not for acquisition, because Matthew didn't talk at all. If he lost his speech, then probably he would be covered, but he became covered after he was diagnosed with autism and that was approved after that and I asked the speech therapist to join the network and that covered and I only paid co-pays, so that was what I paid. I'm sorry to interrupt, but my question was that the court addressed the issue with regards to the insurance in terms of your having access to the carrier to get reimbursed for the children's medical expenses. No. The court did not address that issue? No, the court didn't address that. The court didn't even rule for the father to reimburse me for the medical expenses that I incurred, because I stated that he paid me $600, I believe $660. $600 and something out of $4,000. Yeah, out of more than $4,000 that I spent. Okay, and that was raised at the trial? Yes, it was raised. All the records and all the receipts were provided for the trial and for some reason the judge misunderstood me. She believed that there was some court order that ordered father to continuously pay me 50%. The court order that was entered on June 2010 only stated that he had to reimburse me up to the date for all the expenses that I incurred that included braces, that included some other expenses, and it was still a lot of money. It was a medical necessity. I want to emphasize that it was a medical necessity for those braces because Michael is an older child. He was diagnosed with overbite. He was hurting himself with his lower teeth when he was eating. Okay, and the other question I have, were these issues, was the issue of the insurance reimbursement or access, let me ask this one, was the issue of the access to the insurance carrier brought up on the motion to reconsider? Well, at that moment there was no issue because I was still on the policy. I explained to the court that because of the city of Chicago policy, my husband was unable to remove us, me and the children from his insurance. So I was on the policy and each time I give them a call, they see me there. I have to explain to them because there are a lot of policies that cover insurance and they will not speak to me until they know for sure who I am and I have to provide them some details like my birthday, maybe, you know, a social security number or at least give my address, phone number and some other things that they can identify me properly. So there was never an issue at that moment. But after the divorce, I'm out of the policy. My husband changed his job and once he changed his job, he didn't let COBRA, so I had to go and get insurance because he was not covered and the children were not covered for more than a month. Was the trial court aware of this? The court was unaware of this. We explained this to the judge on our motion to reconsider. But all of this happened after the divorce. It happened after the trial. Excuse me. Yes. What you're describing now, at the time of the trial, your husband had a job that was coverage in terms of the insurance and now you're here before the appellate court talking about things that were not covered at the trial or in a motion for reconsideration. All of this happened afterward. Is that not correct? Well, this happened prior to our motion to reconsider. And we informed the judge that what happened. And he didn't even pay me for half a month of child support in that particular time. He left one job on 31st of December and got another job on 2nd of January. Of what year? Well, it was 2011 and January 2012 he got another job. Motion to reconsider was heard on March 27th. We informed the judge. She just didn't want to listen. Of what year? Of 2012. The issue of pension, what was raised at the trial level? And was there any determination made on the issue of pension by the judge? Well, she made two wrong determinations about my husband's pension plans and she didn't even determine my pension. It's not anywhere on the judgment. So what is your argument on the issue of pension? Well, she cannot split property properly until she knows what funds are available to split. So what is it you're asking this court for? Well, I'm asking this court to reverse this judgment and give me another trial just to try and explain the situation properly. Because I was, by this judge at the trial, I was given $87,000 by my husband three times. And these were marital money. What does this have to do with pension? I'm asking about the pension. Well, pensions are not ruled upon age. What happened in terms of your pension and what happened in terms of your ex's pension? Well, each looks like going to keep his own because there is nothing in the judgment that says it covers anything. It's silent. I'm sorry to interrupt. That's the problem. Your husband asked for half your pension and half of, I forgot what it was, and there was an issue regarding the pension and the judge never ruled one way or the other. There's nothing in this judgment that addresses the issue of the pension. There was a request for life insurance for the minor children. There's nothing in this judgment that addresses the issue of life insurance. There was a request for college funds. There's nothing in the judgment that reflects a ruling on that. There's nothing in the judgment that reflects a ruling on the medical expenses. And there's misstatements of what your husband's pensions were and nothing in there about your pension at all. Is that correct? Yes, it is. All of those? Yes, all of those statements, all of those. And the same applies to this requested three-year reserved maintenance. If I get the job, he won't pay anything, but he still denied that. He's stating that I'm so qualified, I'm smart, but economy is not good, and I have two children in my custody. And it was not clear, and it's still not clear. I'm still on my old job, but currently I'm going because a new system is already implemented that I'm expecting layoff any time. Next week, maybe even this Friday they will give me something. But you said that in 2011 that you were anticipating layoff. Was that correct? Yes. Okay, but you have not been laid off, and you're still on the same job. Yes, I'm still on the same job. But we were informed early in the process that we will be outsourced. The whole team that covers the old system would be outsourced. So they promised us severance package, but it was only words. So now the company is not doing well, and I'm not sure if it will be paid. I never signed any severance package, but the judge assumed that it is guaranteed. It's not. Let me ask you one other thing. This trial lasted for three days. Is that not right? Yes. You had a three-day trial. And now you're asking us to send the case back for another trial. Well, I don't see any way how this can be resolved because everything that is in this judgment is incorrect. Everything. My mortgage amount is undetermined. The amount of money that I spent on this house. Let me ask you this. Have you all gone in requesting a modification of the judgment? Well, I didn't request this because I'm not sure how this can be modified. What is the right information there? Because it has so many contradicting amounts on which we have to rule. Okay. I just don't see how it could be resolved. I'm lost because I can look, and my mortgage amount I stated at the time of the trial was $250,000. The judge calculated this as $87,000 minus $66,000 at $21,000. Then my husband gave me $87,000 to repair everything in the house. This never happened. I spent my money. I paid special assessment on this house. I paid regular assessment on this house. I paid property taxes. But you were the only one living in the house, correct? Hmm? You were the only one living in the house. Yes, I was the only one living in the house. You and your children. Yes.  He moved out, but he still remains on the title of the house. In what year? Oh, he moved out in 2008. In 2008? Yes. And you paid these expenses for the upkeep of the house long after he had moved out? Yes, he moved out, but he still remains on the title of the property. So at any time he can claim rights. Isn't your husband contending that he's not on the title? No, he is on the title. He is on the title? Yes. I'm absolutely sure. I checked with the bank just a week ago. But he's not on the mortgage. He was not on the mortgage. He was alone on the mortgage, but he... But you had it refinanced. Yeah, refinanced. And the judge actually still believed that he was on the mortgage because she ruled. She said that I will be penalized. The house has to be sold if I don't remove him from mortgage immediately upon the trial. Because she believed that he paid for all the expenses. Or he gave me money to repair the house. She believed in all of those things. Because she misunderstood somehow about those $87,000, which were marital money, that went to refinance the house in 2008. After that, that money was gone. They were in the equity. And I do not understand how they even raised this issue that he gave me something. This was marital money. I didn't have access to the money. That's why he had to give it to me. I had no idea where he moved everything to stock market. And I informed the judge that he wanted to increase the mortgage. Prior to his departure, he increased the mortgage. He took $27,000 out. And he wanted me to take that increased mortgage amount. It was above my income. That's why I refused. And banks would never give me such amount of mortgage. Can I ask you about going back to the issue of the visitation? So if I understand correctly, you don't have an issue with your husband having visitation, unrestricted visitation for the older child, correct? Yes. With older child, there are no problems. Okay. He can take him on vacation. He can go with him anywhere. Right. But as to the younger child, you want restricted or limited visitation. Yes, he can have them, but preferably he needs to sleep in a comfortable environment because he's very nervous. That's the problem. He's nervous. He does worse at school after this. And there are complaints about his behavior. He just breaks loose. And he suffers from this because at school they're not happy. The father doesn't do any homework or he doesn't exercise in any sense. It's not good for the child. Because the father never expressed any concerns in any of his filings about the child's well-being. He always says that he will enjoy this. He won't be concerned about himself. All right. If there's something else you want to say, you certainly can. Or after counsel completes his statement, if you want to come back, you can come back for a couple of minutes. Okay. Thank you. If nobody else has any further questions, I think so. Counsel. Good morning. Good morning. I'm Alex Pirodovsky on behalf of the respondent, the appellee, Gerasim Dubinyuk. I was also the trial attorney. The trial lasted three days, as your honors know. And it was in November of 2011, not in March of 2012. Ms. McCable was represented by counsel, Paul Plotnick, at trial. She was not pro se. We know all of that, counsel. We've read the record, and we know when the trial was and when the motion to reconsider occurred. I'll just jump to the issues that were raised by Ms. McCable, and then I'll go back if there's time. With respect to visitation, there was extensive testimony with respect to Matthew. I'm going to stick to Matthew because there's no issue with respect to Michael. Matthew has been diagnosed on the autism spectrum. The evidence induced at trial showed that prior to the separation, it was Mr. Dubinyuk, not Ms. McCable, that was primarily, if not solely, responsible for taking him to speech therapy. He took him to whatever activities he could participate in prior to the separation. After the separation, the children, both children, were in the physical custody primarily of the mother, and she got her own speech therapist. The speech therapist, this is evidence induced at trial, speech therapist came to the marital home, and Mr. Dubinyuk was not present for the speech therapy session. I thought you said you were speaking of visitation. Pardon? I thought you said you were going to address the issue of visitation. Yes. What's that got to do with speech therapy? It has to do with the fact that when Ms. McCable said that he doesn't have a bond with his child, he doesn't have, he doesn't know what to do with him, the evidence at trial showed otherwise. He does have a bond. The evidence at trial also. Wasn't the issue that she was actually raising was the environment, not necessarily the bond, but in terms of the environment for his child? She raised both, I thought. But in terms of the environment with the child, the evidence at trial showed that Mr. Dubinyuk spends a lot of his time at his girlfriend's house. There is a separate bed there, or there will be, there has to be under the court order in order for Matthew to be there. I'm just wondering where it's going to be. The lady has a two-bedroom apartment. She and the guy are in one. She's got a 190 to 200-pound teenager in the other one. Now we're going to bring two other boys in there and have three beds in one room? Well, there is. Or I guess if there's a living room. Yeah, I mean, there's a living room. There can be a bed in the parents' bedroom. The evidence at trial also shows that Matthew sleeps in the same bedroom as Ms. McCable. So his bed is in there. But then sleeping in the bedroom with your dad and his girlfriend. At his parents' house, and there's also a bed at his parents' house where he stays. How many bedrooms does the appellant have? Appellant? I don't know that that was adduced at trial. I don't know. I don't know the answer to that question. The only thing from trial was that Matthew sleeps in the same bedroom as Ms. McCable. In terms of also at trial and consistently throughout the case, Mr. Gumenyuk, I believe to this day, Mr. Gumenyuk has expressed care about his son, not just his own interests. It freely acknowledges the fact. We're not. I mean, it really is not. She said it, but it's not the issue. The issue is did the judge rule on the issues that were presented to the judge? So if you can address that, because in the motion to reconsider, I think you said, the judge, you didn't address the pension. You didn't address this. You didn't address that. And she still didn't address that. So tell me, tell us, please, are there issues that should have been resolved by the trial judge that were not? Are there misstatements in the judge's order that are different from what the testimony was? There are, in terms of the visitation that was addressed specifically, she found in a couple of places in the order she did find that visitation is appropriate, as long as Matthew has his own bed wherever the father takes him overnight. So that was addressed specifically. Counsel, let me ask you this. And the father has had Matthew for overnight visitation previously. Is that not correct? I don't think so. No? Not for three years. I don't think so. That's in part because there was a temporary visitation order. It was an agreed order between your client and the appellant that for three years he had no overnight visitation. Prior to that, did not the child spend overnight visitation with the father? Or was this about scratches on the back or something like that? Was that during an overnight visitation? I don't know that that was during an overnight visitation. I don't think there was overnight visitation because the father is sensitive to the fact that right now the child is Matthew is better off in his own bed. What was the testimony about if the child got agitated, then the father would bring the child back home? Right. That was the testimony. An overnight visitation, if the child shows or says or indicates that he would rather not be there, the father is not going to keep him there. It's a perspective. Yeah, if it happens. If the older son is there and he notices that his brother feels like he wants to go, he wants to go home, the testimony was that the father isn't going to keep him there just because he's allowed to but pursuant to a court order. That's in nobody's best interest. With respect to the other issues raised by the appeal, there were... I asked you to address the ones that weren't. Were there issues that were raised during the testimony of the trial in the pleadings, what was requested by either the appellant or the appellee that were not addressed in the court's order? When Your Honor says addressed, everything that was raised at trial was in some way addressed. Well, counsel, get into the motion to reconsider. There was need by you for clarification or your client for clarification on the court's order. So that's what Judge Lampkin is getting at. There appears to be in the record some issues that were not resolved at the trial level. So that's what we're trying to determine today. For example, the visitation, the college fund, even your client agreed in the motion to reconsider that there needed to be some clarification, so that's what we're trying to get at. Yes, Your Honor. I don't believe the college fund was raised in the... Well, then why was it addressed in the motion to reconsider? Why was your client asking for clarification with regards to the college fund in the motion to reconsider before the trial court? I'm not sure, Your Honor, because it wasn't... The only thing that happened at trial with respect to the college fund is it was acknowledged that there is a college fund with some money in it. With respect to who has control over it or whose name is on it, that was never addressed at trial. Also, with respect to this... Wouldn't that be significant as to who has control over the college fund and how it's dispersed? Yes, I believe it's an important issue. I believe it's an important issue in terms of how and when it's dispersed, Your Honor. But it wasn't raised at trial. But how is it currently is under the control of the appellee, is that correct? The college fund? Yes. And so if the court did not further address that, then it remains under control, is that correct? Yes. Yes. With respect, the other issue that wasn't raised at trial at all was this issue of the wife needing access to the insurance as if she were a policyholder. That wasn't raised at trial at all. With respect to the pensions and the split of marital funds, that clearly was raised at trial. There was extensive evidence with respect to pension funds and who had what and how it should be split. So explain to us how the pension fund was resolved by the trial judge. Well, it wasn't expressly resolved. None of the – there were – the court clearly showed that it heard evidence and took notes at trial. But in terms of the decretal section of the judgment, it's not addressed expressly, by which I understood it and I believe which means that we have – what we asked for at trial wasn't given to us, what Ms. McHale asked for at trial with respect to the pension fund. Or it wasn't addressed, period. It wasn't addressed, so the status quo remains. We should assume that every time the judge doesn't rule on the issue, she's saying just leave it as it is, even though this is a contested issue. She's saying the status quo remains in place. So in terms of the medical expenses reimbursement that the wife asked for, you agree that was not addressed? I agree that wasn't resolved in – Okay, wasn't resolved. Yes. All right. So if it wasn't resolved, then it's just leave it the way it is. Status quo, yes. Do you have any case law that supports your position that if a trial court does not address an issue that's been raised at trial that then the status quo should remain as is? Do you have any case law to support that? I do not, Your Honor. I do not have any case law at present that supports that position or – and there was a motion to reconsider brought and we raised these issues and Ms. McHale raised these issues. And frankly, one issue that we brought up at the motion to reconsider was with respect to extended visitation for spring break, summer break, that sort of thing, which also wasn't addressed. And we took that to mean that our request for extended visitation was denied. It wasn't addressed at the trial or it wasn't addressed during the motion to reconsider or either one? It wasn't resolved. It was addressed by attorneys, by us, at both trial and at the motion to reconsider stage, but wasn't resolved by the judgment and the judge just denied the motion to reconsider in all respects. All right. What about the issue regarding to the house, the home and the mortgage? Was that issue raised at the trial? The issue regarding – yeah, I mean there was extensive testimony regarding the house and the mortgage and the equity and that was, I believe, addressed at trial. The judge ordered us to quit claim the deed. We prepared a quit claim deed and sent it. I don't know whether it's been recorded or not, but we did in paragraph C of the decreed section of the judgment. The judge orders us to sign quit claim, our interest, over to the wife, which we did. And paragraph D, and I think Ms. McAva is wrong, the judge didn't rule, didn't assume that the husband was still on the mortgage. Well, she said if you don't take him off the mortgage. That sounds like she says he's on the mortgage. The judge said if the husband is listed on the mortgage to take him off. And he is not listed on the mortgage. Well, but all the evidence was that he was not on the mortgage, that he was only on the title. So to me, this makes no – to me, reading this, I would think the judge was just straight out wrong with the facts because she says if he's on the mortgage, then the lady's got to sell the house and split it and give him half of the proceeds if she doesn't get him off the mortgage in 30 days. She didn't say the title. She didn't mention the title. She tells her 30 days from the time I issue this judgment, you've got to go and get the mortgage changed and get him off, or otherwise I'm going to make you sell the house and give him half the proceeds, even though I've given you the house. Which to me is a – the two paragraphs are completely in conflict with each other. It's your house. You can do it as you please, but if you don't take his name off of the mortgage, you've got to give him half of it. Your Honor, I do think she does mention the title. She orders the husband to quit claim the deed to Ms. McKayla. Maintenance was also addressed in trial and at the motion to reconsider, and there was extensive – Counsel, you addressed that issue of the value of the house in terms of the judge's ruling to award the appellant the home, and as I understood your argument, you were saying that the value was $127,000 or something like that, the equity. And so when she was ordering the split in the event that she did not comply with getting him off of the mortgage, then basically they would have an equal amount because the overall value of the house would be $300,000 and some odd thousand dollars. Is that correct? And so if they split it, then she would have half of the value and he would have half of the value. Yes, the evidence – That's what I understood you to be arguing. That's right, Your Honor. The evidence at trial was that there is – at the time of trial, there was about $125,000 of equity in the house. That all will go to the wife. Also the evidence at trial was that the wife's pension at that time was about $101,000. That's all going to remain with the wife. My client works for the City of Chicago, has one retirement, 457 plan, plus a pension plan from work. The total of those at the time of trial was approximately $236,000. The judge never said that, what you're just saying now. The judge never said the wife's going to keep her pension and the husband's going to keep his pension. Even though you – when there was an issue, you, I think, or your client requested a 50-50 split of both of their pensions. So there was no ruling on the request. I think the effect of the order is that she – This is your – if it's not said, you go back to if it's not said, then that's what she meant. Practically speaking, Your Honor, as of the date of the order, my client has his pensions, Ms. Makeva has her pension, Ms. Makeva has the house, the equity and the debt. And that's the effect of the order. And that, I believe, is – it's not an abuse of the trial court's discretion, allowing that to remain in place because of the – because of all of the other evidence that was adduced at trial with respect to the relative salaries of the parties and the education. I'm sorry to interrupt you, but wasn't there conflicting evidence as to what she made and what he made and how much he paid and how much she paid? Wasn't – didn't they say different things? I don't think so. Maybe in prior years, you know, who made what in 2009, 2010. I don't think anyone disagrees because there were check stubs. I don't think anyone disagrees with – and tax returns – with what anyone earned at the time of trial and what anyone paid at the time of trial. There was a disagreement with respect to – I mean, I can address it with respect to this medical expenses that Ms. Makeva claims we didn't pay. That was specifically addressed by the judge in the order.  Yes. In what she said was supposed to be paid? No, she said – I mean, in the portion where it says, and so this is my order. Not in that portion of the order. Okay. She just talks about facts. She talks about – Oh, she doesn't even call them facts. She says, this is what the appellant said, this is what the appellee says, and this is what the guy's girlfriend says. And if there's conflict, then she doesn't say, and I believe the appellee or I believe the appellant or I believe the girlfriend. And she's written in there several questions. I mean, she states the facts and then says something like, is this true or – With respect to the medical expenses, that's one of the places where she writes in, this is appropriate, something to that effect. This is appropriate. Ms. Makeva mentioned the order that was entered in June 2010, which ordered there was a true-up as a bad date. My client was ordered to pay whatever expenses she raised up to that date. From that date on, there – and the evidence at trial showed that the speech therapy was covered by my client's insurance. All of the medical expenses – this is all evidence at trial. All of the medical expenses that after the June 2010 date that Ms. Makeva requested that my client pay half of at trial, there were only two categories of expenses that my client didn't want to pay for, didn't feel it was appropriate that he should pay for. One was speech therapy, which was covered by his insurance, where all he had to pay, all the insured had to pay was $20 co-pay. Ms. Makeva chose to use a speech therapist that wasn't in that plan and ended up paying apparently $50 per session. My client felt that because it's covered, they can find someone in the plan and pay $20 per session so he would pay his half of that $20 co-pay. I thought that occurred after. Maybe, and I'm going to go back and look at the record. But I thought she was paying $50 before the company had approved speech for the child. Once your client's company had approved the treatment, then she started paying the $20. She was paying $50, and up to June 2010, either she and or her attorney brought a motion for payment of medical expenses, which covered up to June 2010. We were ordered to pay whatever the judge ordered us to pay, which we did. My client did. After that, she continued to pay $50 even though the speech therapy was by then and after that covered by the insurance. She chose to pay $50 instead of finding someone for whom she could only pay $20. I have an insurance-related question. With regards to this issue about access to the minor children's insurance card, was that issue raised at the trial court level? No. It was not raised? It was not raised. Was it raised in the motion to reconsider? I think it was raised in the motion to reconsider. But it wasn't brought before the trial judge to consider at the time during the trial? No. Okay.  One of the things that Ms. McKay bought for Michael that my client felt were extravagant for a teenager. What about the $4,000 that she just testified versus the $600 that your client allegedly paid? My client paid – there was no testimony at trial. I mean, the number came out, I believe, at trial, $4,000, but there was nothing at trial substantiating that number in terms of evidence. And the parties – like I said, the parties – the only evidence at trial with respect to these medical expenses were that my client believed that once the speech therapy was covered, he should have to pay the co-pay, not – if he wasn't in the plan and pay them more, that's her option, but my client shouldn't be penalized for that. And that's one of the specific findings that was actually made in the judgment, was that that's appropriate. Yeah, but I'm just looking back at the ruling of the judge. And the judge, when she made that comment about the $20 co-pay for an in-network provider, this is appropriate head-knocking. She's not specifically addressing the $4,000 versus the $650, whatever it is that he paid. I'll just say this. It's confusing at best. All right. I have one other question with regards to the visitation. So if I understand you correctly today, are you saying that your client is amenable to not having overnight visitation as to Matthew? My client is not amenable to not being allowed to have overnight visitation. My client is amenable, and always was, to voluntarily make a parental decision as to whether he believes Matthew is ready, just like Ms. McAva can voice her opinion as to whether he's ready. And if not ready, he will not take him or return him. My client doesn't want to be in the position where he has to come back to court and prove somehow that now, as of 2016 or something, or 2015, in August, as of today, he is ready for overnight visitation, as opposed to a week ago when he wasn't ready. My client doesn't want to be in that position. So you have asked for overnight visitation both from Wednesday to, what was it, Thursday, and then every other weekend from Friday to Sunday, right? And then you wanted extended visitation during the holidays as well. Yes. And that's still your client's position? Yes. And again, as he said at trial, he doesn't intend to use that right as a sort. And his request for extended visitation, however, was not addressed? It wasn't addressed, yes, with the effect of... But she did address the overnight visitation. She addressed the overnight visitation with respect to every other weekend. This is just curiosity. Has it ever occurred, the overnight visitation with Matthew? I don't know. I don't think he has taken him overnight still, and probably he's not ready. But that's speculation. Okay. Does anybody have any further questions? All right, thank you, counsel. If you want, you just have a couple of minutes. Opposing counsel just mentioned that they presented some evidence about speech therapy and some other expenses that Mr. Gumenyuk allegedly incurred prior he left the house. There was no evidence. He was just telling this. He said that he was using speech therapy. I'm sorry to interrupt you. When people say there was evidence, he may have testified to it. He may not have presented something, but the judge can consider that. One such thing is speech therapist report that she has to provide for insurance to justify the treatment. He never presented anything like this. I presented that, but judge was still unsure. She questioned herself in the judgment who was the provider of speech therapy. Even though I provided her with receipts, with speech therapist evaluation report for Matthew, she still wasn't sure. She believed that this was all my husband's deeds. Well, Matthew is taken for overnight visitations. He doesn't have his own bed in that apartment at Girlfriend's. And he sleeps together with Michael in the living room. They don't have any privacies there. So he has spent overnight. Well, yes, he stays in there. The child is not good after that. He's behaving wild, and it takes time. How many times does he spend overnight? Well, it's every other weekend. Well, on some days, child asks, and he doesn't want to go to sleep, so he returns him. How long has he been doing that? Well, he started this shortly after the order was taken in effect. Because the child was asking to return home, and he just really didn't understand. And he brings him home sometimes after midnight. Because this is when they go to sleep. This is not the time of the child. He brings him, he just barely walks. He's pale. He can't, you know, he doesn't understand where he is, and he needs some time even to adjust to his home environment. Because for him, every change is hard. He's dealing with, you know, kind of like this adjustment issue to everything. But this is all after the court. This is after the court order. Yes, this is after the court order. All right. All right. Thank you so much. Thank you both. We're going to take the case under advisement, and we are in recess.